v. Willis, Mr. Otis. Thank you and good morning, Your Honors. Nicholas Otis on behalf of the appellant defendant Antwon Willis. We raised two issues in our brief. First, that there was a material variance in the superseding indictment in count one, and two, that there was an exclusion of African-Americans on the jury such that a new trial is warranted. The first issue, the material variance, the defendants argue that the conspiracy that was proved at trial was not included in the superseding indictment. There were two indictments. There was an original indictment filed on October 8, 2014, and Mr. Willis was part of that indictment, and there were eight other named defendants. Eventually, those eight defendants pled out to some sort of conspiracy charge or charges related to the conduct. And then on May 14, 2015, 218 days after the original indictment, a superseding indictment came down naming only Willis and the co-defendant Erika Simmons. Count one, which is the only count that we are here about today, the remaining counts in the superseding indictment were dismissed by the government prior to trial. Count one alleged that Antwon Willis and Erika Simmons took four actions, that they combined, Correct. It confederated and agreed. And had it just been that language, combined, conspired, confederated, and agreed to deal heroin in the Northern District of Indiana, we wouldn't be here today, except the government added additional language that modified those four actions, and they added, with others known and unknown in the Northern District of Indiana. And that, combined with the original indictment, where Willis was alleged to have conspired with eight other defendants, created the confusion that it had to be Mr. Willis and some other unnamed defendants, and that a reading of count one was not that Willis and Erika Simmons conspired together. Mr. Willis cited in his brief three cases, one from the Northern District of Illinois, and then two from the Seventh Circuit, the first one being U.S. v. Paulette. What did the jury instructions say about the conspiracy with other people? I believe that the jury instructions followed the indictment, Your Honor. And I don't have that before me in our brief, but the defendant at trial moved for a directed verdict on this issue, and the court denied that, finding that there was sufficient evidence that Willis and Simmons conspired together. You mean that there's some debate about conspiring with each other as opposed to others? Correct. There was definitely evidence presented at trial, and we concede that, that Willis and Erika Simmons conspired together. There was testimony from some of the original eight defendants that they would call Willis to buy heroin, and that they would go to the location and Erika Simmons would be there. But that was not in any of the overt acts in the superseding indictment. And again, if you read the indictment... It's a shorter sentence than he did, because hers was more contracted. He had a broader, I don't know, activity, or whatever. Correct. I believe the evidence was that he had been engaging in this conduct longer than her. She came into it sometime in the middle of, between 2009 and 2014. But again, there are three cases, U.S. v. Paulette. The indictment alleged the defendants combined, conspired and agreed with each other and with others. U.S. v. Rosenblum, Seventh Circuit case, alleged the named defendants unlawfully, knowingly, willfully and feloniously conspired together with each other and with other persons. And then finally, U.S. v. Carson, the indictment alleged the named defendants did knowingly combine, conspire and agree together with each other and with other persons. And so when the superseding indictment includes the with others language, they're modifying conspired, agreed, combined and confederated such that Antwon Willis could only have been guilty of the conspiracy if he combined with others unnamed in the indictment. And so, if you look at the overt acts alleged in the indictment, it's certainly not clear that there was, in the overt acts, allegations that they conspired together. All these other people you're saying are just customers, users. Well, that is certainly part of our argument. Those other people would have been the original named defendants in the original indictment. Those were the individuals that testified at trial, and it is our position that that's all they were, was buyers, that there was not a conspiracy between Willis and those individuals to then go and resell to other individuals, that they were just the end users of the heroin. And the jury was told what about that? I'm sorry? And the jury was told what about those other conspirators? The ones mentioned, not the ones in the indictment. What was the jury told? The jury was told that based on the indictment that that Mr. Willis could be found guilty based off of a conspiracy with Miss Simmons or with others named or unnamed in the indictment. But there was no evidence about others, is that what you're saying? There was evidence that Mr. Willis sold heroin to other unnamed defendants who were the named defendants in the original indictment. Those individuals came and testified that they purchased heroin. Were they dealers or just users? It is our argument that they were just dealers. Were they just dealers? I'm sorry, just users. I apologize. We cited to significant evidence where they would drive to Illinois, drive to Hammond, Indiana, pick up the heroin, often immediately start using it while they're driving home. All of them admitted that they used nearly 100% of it. Some of them said 99%. Some of them said 95%. But they testified that these were quick transactions. Willis never gave them instructions to resell. And Willis had no idea that they would have been reselling. But there was some evidence that they sold a very, very small portion of the amount that they purchased. But this was not dealer quantity heroin. This was end user quantity heroin. This tossover idea where you throw stuff through a window or a car window or something. Were they cars next to each other? Correct. And they exchanged money back and forth? The testimony was that these were extremely fast transactions, usually under a minute. They would pull up next to each other in a parking lot at a grocery store, home improvement store, roll down the windows. The user would usually put money in a cigarette container, throw it through, and then the heroin would be exchanged. These Boilermakers, I guess I know what they are, but they seem to have some kind of a, I don't know, mail delivery or something. Correct. It was testimony of Brittany Lamond and then I believe her boyfriend, both of whom would travel throughout the Midwest for their work, that occasionally heroin would be mailed to them, correct, and that money would be wire transferred. But again, going back to the main point of that first argument, the superseding indictment does not allege that Willis and Simmons conspired together, but rather that Willis had, in order to be guilty, had to have conspired with the unnamed defendants. I see that my light's on, so I'll save my remaining time for rebuttal. Thank you. Okay. Thank you, Mr. Paula. I'm sorry, Mr. Otis. Mr. Whalen? May it please the Court. Good morning, Your Honors. My name is Nathaniel Whalen. I'm here on behalf of the United States. This instruction, this is instruction 18, right? That's one of the instructions in this case? Is that the instruction as it relates to Ms. Simmons, Your Honor? Yeah. You find either defendant guilty of the offense charged. I just want to make sure I'm looking at the right, that's part of this case. Your Honor, I apologize. I don't have them by number. It's, if you find out... This refers to, well, first of all, whoever wrote, where did these instructions come from? I believe most, if not all, are from the pattern instructions. Well, don't the people who write these instructions know that proven is an adjective, it is not a verb? I don't know the answer to that, Your Honor. What is it? Government has proven, this proven, appears three times here. So what this says is, the amount of heroin includes, the amount of heroin that the defendant's co-conspirators distributed in furtherance of and as a reasonably foreseeable consequence of the conspiracy, while the defendant was a member of the conspiracy. Now, it's telling the jury they're co-conspirators and that the instructions, and that the jury is required to consider how much heroin these co-conspirators distributed. The heroin that was reasonably foreseeable distributed by the co-conspirators, yes, Your Honor. Well, who are the co-conspirators? In this case, the indictment alleged that defendants Willis and Simmons conspired with others known and unknown to the grand jury. The indictment had two named defendants. But they're all unknown, these so-called co-conspirators. Your Honor, Willis and Simmons were the co-conspirators in this case. But it says the defendant's co-conspirators. That's correct, Your Honor. That's three people, at the minimum, a defendant and his or her co-conspirators. Right. Co-conspirators is at least two people. Correct, Your Honor, because there were multiple co-conspirators in this case, Your Honor. What the indictment alleges is that defendants Willis and Simmons conspired to sell heroin with others known and unknown. The government doesn't have to name who the others known and unknown are. But how is the jury supposed to figure out who these co-conspirators are? Is it given their names? Many of them testified at trial. They pled guilty to conspiracies. But were they ever identified as the co-conspirators? No, because the way we argued this case, Your Honor, was that the conspiracy was Willis and Simmons. That was the conspiracy in this case. Which? Willis and Simmons, the two named co-defendants. You say that's the conspiracy in this case. The instructions told the jury to consider the amount of heroin that the defendants, apostrophe S, one defendant, each defendant, co-conspirators distributed. But there's nothing about known names, nothing. How on earth can the jury make a finding about co-conspirators? Your Honor, the jury heard evidence of multiple witnesses who pled guilty to conspiracy to distribute heroin with Mr. Willis in this case. Why doesn't the indictment charge them with having conspired with X, Y, and Z? Your Honor, because most of them have pled by the time of the superseding indictment. Have what? Have pled guilty. So what? We could have included them in there. What we were trying to do is we were trying to simplify the charge in this case, Your Honor. No, you weren't simplifying it because the instructions say amount of heroin that was distributed by the co-conspirators. Your Honor. Which instruction, at least, nails onto each of the defendants. I don't understand. We may be looking here at the fallout of a contretemps 40 years ago in which this court and several other courts of appeals directed prosecutors not to include the names of co-conspirators on the ground that that would drag their names through the mud and they had no right to defend themselves against grand jury charges if they were not then criminal defendants. And so here and in many other circuits, prosecutors were forbidden to include the name of co-conspirators. Now, we may be finding out that that wasn't such a great idea, but I assume that that's where your office's practice came from. Your Honor, I truthfully can't attest as to why they were excluded from the second superseding indictment. What I can say is that the superseding indictment alleges that Willis and Simmons, the two named co-defendants in this case, conspired to sell heroin. Mr. Willis's position on appeal... I'm extremely bothered by the fact that you allow this ridiculous instruction to go to the jury. Don't make any complaint about it. It just doesn't make any sense to ask a jury to figure out the amount of heroin that was sold with the aid of these unnamed conspirators. Your Honor, if your Honor does have concerns about that instruction, it's harmless in this case because Willis and... I don't know why it's harmless. I would think it would confuse the jury. The jury would think, well, wow, they not only were the two of these people, but they're a whole bunch of co-conspirators and we have to figure out, you know, how much cocaine and heroin they... The reason it is harmless in this case, your Honor, is because Willis and Simmons engaged in these transactions that Judge Mannion mentioned earlier, where individuals, the boilermakers from out of state, would call Mr. Willis and say, send us heroin. He would say, okay, put it in Ms. Simmons' name. Ms. Simmons would go and pick up the money transfer. Then she would bring it to Willis. Willis would send the heroin to the buyers out of state. This instruction has to get the jury above the 100-gram threshold. Those transactions exceeded 200 grams. Well, that's a problem. I mean, it's 100 grams. That's correct, your Honor. And I assume there's evidence of a lot more grams than 100. Those money-gram transactions alone exceed 200 grams. Each? Total. It was $18,000... Did you say those two people? Willis and Simmons... Boilermakers? Correct. Willis and Simmons were the distributors for those money-gram transactions. There were 38 of those money-gram transactions. They totaled over $18,000. Based on one-tenth of a gram for $7, which is what Willis was selling in this case, Willis and Simmons, that gets you over 200 grams alone. Just for those two? Just for those two buyers. That's correct. I'm just worried about amount. It's way over the amount as far as the so-called conspiracy, because they're clearly conspiring with each other doing all of this. She, for a reduced period of time. That's where I was asking earlier. That's correct, your Honor. She got less than half the same time he got. I believe he was held responsible... In terms of sentencing, not in terms of the conviction, he was held responsible for 17 kilograms of heroin. She was held responsible for 5. Kilograms? That's correct, your Honor. They were dealing a lot of heroin. Sentencing as opposed to the conviction? Correct. The conviction is only 100 grams. That's the threshold that Elaine requires us to meet to trigger this next level of statutory punishment. Okay, well the sentences, are they being challenged? They have not challenged. Well, Ms. Simmons has challenged her sentence, but not as to the drug quantity she was held responsible for. She's challenged whether she should be held responsible for the gun enhancement. So that issue is waived. Neither defendant has raised it. The issues that Mr. Willis has raised is whether the indictment includes a conspiracy between him and Simmons. Now, he has cited other cases that include the language that the named defendants conspired together and with each other. But that's not legally required language to be in there to put the defendants on notice that they conspired together. If I say, Judge Manning and I conspired to sell heroin, we're on notice that we conspired to sell heroin together. His position is the indictment doesn't say that and doesn't put the defendants on notice of that. Because of that, there was a variance in this case. That's just an unreasonable reading of the indictment, Your Honors. And what he then says, if I understood his argument correctly just now, is that there's no reference in the overt acts to any conspiracy between Simmons and Willis, the named co-defendants. That's not correct, Your Honor. If you look, admittedly, we didn't need to include the overt acts in this case, but we did. Overt acts 12 through 16 all reference Simmons and Willis, including reference to these money gram transactions. So they were on notice that they were charged with conspiring together to distribute heroin. Unless this court has any questions. Well, all she's saying is it was for a reduced period of time. Your Honor, her argument is that there was a problem with this instruction. As I understand it, there was a problem with this instruction because she could have been held liable for acts beyond her particular co-conspirator agreement with Mr. Willis. But the instruction limits it to the time when she was involved in the conspiracy. And to the extent that this court does have concerns, again, the money gram transactions with just Willis and just Simmons doubled the statutory threshold that we had to meet in this case. So any error is harmless. For the conviction. For the conviction. That's correct, Your Honor. We're not dealing with the drug quantity of sentencing. No one has challenged that issue. Okay, well, thank you, Mr. Willis. And Mr. Otis, you have a time left. Thank you, Your Honors, and I'll be brief. To Judge Easterbrook's point about not dragging unnamed co-defendants through the mod, that point is well taken except for the fact in this case the unnamed co-defendants were individuals that had previously pled guilty to conspiracy. And so they would not be dragged through the mud. Additionally, the hypothetical pointed out by the U.S. attorney where Judge Mannion and the U.S. attorney conspired to sell heroin, I guess English-speaking-wise, that's different than what is in the superseding indictment that says Willis and Simmons conspired with others. And so it's on that basis that we believe that the conspiracy that they were found guilty for was not contained in the indictment. It was a material variance. And so, therefore, that conviction should be reversed. Thank you. Okay, well, thank you very much.